UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT CARELOCK,

                  Petitioner,    **No: 6:12-CV-06498-MAT**

    -vs-                               **DECISION AND ORDER**

DALE ARTUS,

                  Respondent.
_____

## I. Introduction

Robert Carelock ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in Respondent's custody in violation of his federal constitutional rights. Petitioner's state custody arises from a judgment of conviction entered against him on September 1, 2005, following a jury trial in Monroe County Court of New York State. Petitioner was convicted of Burglary in the Third Degree (N.Y. Penal Law § 140.20) and Attempted Petit Larceny (N.Y. Penal Law §§ 110.00/155.25).

## II. Factual Background and Procedural History

### A. Trial, Conviction, Sentence, and Direct Appeal

On October 27, 2004, Petitioner walked into the Country Max store in Fairport, New York, which sells pet and garden supplies. Passing through the retail portion of the store, he proceeded to enter the backroom offices marked "employees only". Once inside the restricted area, he rummaged through various desk drawers and a safe. When store employees eventually confronted him, Petitioner

put his hands up, gave a false explanation for his presence in the office, and quickly left the store. He was subsequently arrested and, in March 2005, was charged with third degree burglary and attempted petit larceny.

The particular facts of the trial are not relevant to Petitioner's habeas petition, which only raises a claim of juror bias. On July 6, 2005, the jury found Petitioner guilty as charged in the indictment.

The trial court held a hearing to determine whether Petitioner should be adjudicated a persistent felony offender under N.Y. Penal Law § 70.10. Just prior to sentencing, trial counsel stated the following:

> Before I comment with regard to sentencing, page seven of the current PSI [Pre-Sentence Investigation Report] . . . , my client stated to the reporting officer that Juror Rose Reed who sat on the jury on the instant indictment, he indicated that he knew her since he was a little boy. [Petitioner] feels she blames [Petitioner] for how her son is because they got high together in the past. According to [Petitioner], Juror Reed lied to the Court. I think that's with regard to knowing or having knowledge of my client.

9/1/05 Transcript ("Tr.") at 32. Defense counsel acknowledged that this issue had not been raised during trial. Id. at 32-33. The trial judge questioned why Petitioner had not raised the issue earlier since, "if [Petitioner] knew this woman since he was a little boy, obviously he would have recognized her and brought that to [counsel's] attention during jury selection." Id. at 33. Trial counsel responded that "[w]ithout breaching attorney/client

privilege, [he] could say that it was not raised on the record." Id.

The judge commented that he did not know what relief presently was available, as "[t]his happened outside the record and there is no apparent reason that it was not brought out on the record to the Court's attention during the course of the trial[,] . . . [when] the issue could have been remedied or addressed." Id. Defense counsel agreed and suggested that a motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 would address the issue "more appropriately." Id.

The judge then sentenced Petitioner, as a persistent felony offender, to an indeterminate term of fifteen years to life imprisonment for Burglary in the Third Degree, and a concurrent sentence of ninety days in jail for Attempted Petit Larceny. Id. at 42-44.

On direct appeal, Petitioner argued that (1) the verdict was against the weight of the evidence; and (2) the sentence was unduly harsh and severe. The Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed the conviction. People v. Carelock, 67 A.D.3d 1417 (4th Dep't 2009), lv. denied, N.Y.3d 937 (2010).

**B. Petitioner's Motion for Vacatur**

On December 30, 2010, Petitioner filed a pro se motion for vacatur pursuant to C.P.L. § 440.10, claiming that (1) his trial

was unfair because one of the jurors, "Juror Reed," was biased against petitioner; and (2) the persistent felony offender sentence violated his right to a trial by jury. See Respondent's Exhibit ("Resp't Ex.") G. Petitioner also asserted in his supporting affidavit dated December 23, 2010, that in the early 1970s, he was "childhood friends with Juror Reed's son Ronald" in or around St. Simon Terrace in Rochester, New York; that Petitioner and Ronald "frequently got high together to the objection of juror Reed"; that "juror Reed held [Petitioner] responsible for her son Ronald's drug use"; and that in 1976 or 1977, "Juror Reed called the police on her son Ronald and [Petitioner]" for stealing a shotgun, although "[n]o arrests were made." Petitioner's C.P.L. § 440.10 Affidavit ("Pet'r 440 Aff."), ¶ 16, attached as Ex. A to Resp't Ex. G. According to Petitioner, the juror should not have been allowed to serve because she was predisposed to find him guilty based on their previous interactions. Petitioner alleged that he "did not recognize juror Reed as Ronald's mother until after [Petitioner's] one day trial and before sentence," because "these events took place over 25 years ago," and because Petitioner's drug use had affected his memory. Id., ¶¶ 11-13.

On March 27, 2012, Monroe County Court Judge James J. Piampiano ("the 440 Court") issued a Decision and Order denying the motion. See Resp't Ex. I. First, the 440 Court rejected the biased-juror claim on the merits, finding that Petitioner's moving

papers lacked sworn allegations substantiating, or tending to substantiate, that the juror in question was the person she was alleged to be. Furthermore, even if the juror was the person alleged, Petitioner's moving papers failed to include sworn allegations substantiating, or tending to substantiate, that the juror remembered Petitioner during jury selection, or at any time during the trial. The 440 Court found it significant that Petitioner claimed that he himself did not recognize the juror as the mother of his childhood acquaintance until after trial. Therefore, the 440 Court concluded, a hearing on Petitioner's motion was unnecessary.

In the alternative, the 440 Court found that the biased-juror claim was procedurally barred because Petitioner "unjustifiably failed to pursue his argument, relative to the allegedly biased juror, before the Trial Court at the time of sentencing. At that time, the information upon which the pending motion is based could have readily been made to appear on the record." Resp't Ex. I at 3. Accordingly, the 440 Court found that Petitioner's motion "was not made with the requisite due diligence, pursuant to CPL §440.10(3)(a)." Id. Finally, the 440 Court rejected the argument that the persistent felony offender statute was unconstitutional. Id.

Subsequent to the 440 Court's issuance of its decision, Petitioner submitted additional papers. See Resp't Ex. J. Petitioner

attached, among other things, an affidavit from a private investigator named Ronald H. Storm, Sr. ("P.I. Storm"), whom Petitioner apparently retained in connection with his biased-juror claim.

In his affidavit, P.I. Storm claimed that he tracked down a woman named Rose Reid ("Juror Reid") who resided in the Town of Brighton, New York, and determined that Juror Reid had lived on "St. Simon Place" in the 1970s; that she had a son named Ronald Reid ("Ronald"); and that she had, years previously, sat as a juror on a burglary trial. She told P.I. Storm that she did not recognize Petitioner's name. Affidavit of Ronald Storm ("Storm Aff."), ¶¶ 7-9, attached as Ex. A to Resp't Ex. J. According to P.I. Storm, Juror Reid later contacted her son, who confirmed that he "used to play with [Petitioner] on the play ground at St. Simon Place" when they were children. Id., ¶¶ 10, 12. Juror Reid continued to insist, however, that she did not remember Petitioner. Id., ¶ 12.

Petitioner sent a letter to the 440 Court on April 6, 2012, asking whether it had considered Petitioner's supplemental papers, including P.I. Storm's affidavit, in rendering its March 27, 2012 decision. See Resp't Ex. K. Petitioner stated that he "need[ed] to know this information" in order to determine whether to "simply appeal to the appellate division or give [the lower court] the opportunity to decide on a motion to renew/reargue." Id.

In response, the 440 Court sent Petitioner a letter dated April 11, 2012, stating that it had received Petitioner's supplemental papers after issuing the March 27th order, but that it did, upon receipt, review Storm's affidavit. See Resp't Ex. L. The 440 Court stated that,

> [e]ven if the Court, in rendering its Decision, were to have considered the allegations made in the [Storm] Affidavit, the Court's analysis and ultimate conclusion regarding the issues raised in the 440.10 motion would have been the same.

Resp't Ex. L.

On April 19, 2012, Petitioner applied to the Appellate Division for leave to appeal the denial of C.P.L. § 440.10 relief. There is no record of the prosecution submitting a response. On June 12, 2012, the Appellate Division denied leave to appeal. See Resp't Ex. P.

### C. The Federal Habeas Petition

In his timely-filed pro se federal habeas petition, Petitioner asserts a single claim: that he was denied his right to due process and a fair trial due to Juror Reid's bias against Petitioner because of certain interactions between Juror Reid, her son, and Petitioner nearly thirty years prior to Petitioner's trial. Petitioner asserts that the juror affirmatively lied to the trial court and counsel so that she could be seated on the jury and "cast a ballot to convict" him.

Before Respondent answered the petition, Petitioner filed a motion (Dkt #8) to appoint counsel and to have the petition held in abeyance.

Respondent answered the petition (Dkt #10), conceding that Petitioner had exhausted his state-court remedies but arguing that the biased juror claim is procedurally defaulted under the adequate and independent state ground doctrine and, in any event, is without merit. Respondent separately opposed (Dkt #12) the motion to stay and to appoint counsel. Petitioner filed a reply (Dkt #13) in response to Respondent's opposition to the stay motion. Petitioner also filed a traverse (Dkt #16) in response to Respondent's opposition to the petition.

The matter was transferred to the undersigned on September 17, 2013. For the reasons that follow, the motion to stay and to appoint counsel is denied with prejudice, and the petition is dismissed.

### III. The Motion to Stay and to Appoint Counsel

In <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), the Supreme Court approved the stay-and-abeyance procedure utilized by the Second Circuit, but held that it "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." 546 U.S. at 277. The Supreme Court went on to explain that "even if a petitioner had good cause for that failure, the district court would abuse its

discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id. (citing 28 U.S.C. § 2254(b)(2)). On the other hand, the Supreme Court noted, "it likely would be an abuse of discretion for a district court to deny a stay . . . if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.

In his stay motion (Dkt #8), Petitioner states that he has obtained newly discovered evidence, i.e., a statement from Juror Reid's son, Ronald, that he wishes to present in a second C.P.L. § 440.10 motion. In the proposed C.P.L. § 440.10 motion, Petitioner will re-assert his juror bias claim, with Ronald's statement as newly discovered supporting evidence.

Respondent argues that Petitioner cannot establish "good cause" for his delay in presenting the allegedly "new evidence" from Reid's son to the state courts. Respondent points out that seven years have elapsed since Petitioner's 2005 trial. Respondent asserts that granting a stay in these circumstances, solely because of Petitioner's pro se status, would render Rhines meaningless. Respondent's Affidavit ("Resp't Aff.") at (citing Williams v. Marshall, No. 09 Civ. 7411, 2011 WL 1334849, at *2 (S.D.N.Y. Mar. 30, 2011)).

Respondent further asserts that Petitioner cannot show that his juror bias claims is potentially meritorious, because the new evidence from the juror's son is "nothing but second-hand hearsay" and is cumulative to that which was already presented to the 440 Court.

In his reply, Petitioner asserts that he was unable to locate Ronald "for a long period of time" and that is why he did not present Ronald's evidence in the C.P.L. § 440.10 motion.

Assuming Petitioner could show good cause for failing to exhaust his juror bias claim sooner, he cannot show that it is potentially meritorious. As discussed further below, even as augmented by Ronald's affidavit, Petitioner has not demonstrated that his juror bias claim has potential merit.

Because Petitioner's juror bias claim is plainly without merit, it would be an abuse of discretion for this Court to appoint pro bono counsel. Accordingly, the branch of Petitioner's motion seeking appointment of counsel is denied.

**IV. Discussion of Petitioner's Juror Bias Claim**

Respondent argues that Petitioner's juror bias claim is procedurally barred because the 440 Court relied upon an adequate and independent state ground, i.e., C.P.L. § 440.10(3)(a), to dismiss it. See, e.g., Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted); Lee v. Kemna, 524 U.S. 362, 376 (2002) ("Ordinarily, violation of firmly established and regularly

followed state rules . . . will be adequate to foreclose review of a federal claim.") (citation and internal quotation omitted). In the interest of judicial economy, the Court proceeds to consider the juror bias claim's substance rather than addressing Respondent's procedural default argument, as the claim is readily dismissed on the merits.

To prevail on his claim that a biased juror interfered with his right to a fundamentally fair trial, Petitioner would need to show actual bias. <u>Smith v. Phillips</u>, 455 U.S. 209, 216-17 (1982). The Supreme Court has explained that

> due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

455 U.S. at 216-17. As the 440 Court correctly pointed out, even if it is assumed that Petitioner remembered Juror Reid based on their interactions nearly thirty years prior to trial, Petitioner has never offered any "sworn allegations substantiating, or tending to substantiate, that the juror remembered [Petitioner] during jury selection, or at any time during the trial." Resp't Ex. I at 2-3. Instead, the only record evidence supports a contrary finding–that Juror Reid did not recognize Petitioner. During voir dire, Juror Reid assured the court, under oath, that she did not know Petitioner. <u>See</u> <u>Smith</u>, 455 U.S. at 217 n.7 ("[O]ne who is trying as

an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter."). Furthermore, Petitioner's private investigator averred that Juror Reid repeatedly insisted to him that she did not remember Petitioner. Finally, the affidavit from Juror Reid's son, Ronald, does not bolster Petitioner's claim. Ronald's five paragraph sworn statement avers as follows: (1) he is the son of Rose Reid; (2) he and his mother knew Petitioner for "many years"; (3) he and Petitioner have known each other since childhood; (4) Ronald's mother has known Petitioner for the "same period of time"; and (5) during his childhood, he and Petitioner both resided at St. Simon Terrace housing complex. See Dkt #8. Assuming arguendo this is true, it does not change the fact that *at the time of trial*, Juror Reid averred that she did not know the defendant standing before her. Even if Juror Reid had a negative opinion of the person with whom her son allegedly used drugs in the past, there is no evidence to suggest that she believed that Petitioner was that individual.

Indeed, as Respondent points out, Petitioner has not even offered independent evidence to support his assertion that he quarreled with Juror Reid in the past. Ronald's affidavit mentions nothing about the alleged conflict between Petitioner and Juror Reid. Notably, Petitioner failed to supply a copy of the police report documenting Juror Reid's alleged complaint to the police.

In short, Petitioner makes no showing of actual bias; he simply speculates about the possibility of bias, which is not sufficient to sustain this claim. See Knapp v. Leonardo, 46 F.3d 170, 176 (2d Cir. 1995) ("Jury bias can be established only if a habeas petitioner demonstrates that prejudice is manifest."); United States v. Garcia, 936 F.2d 648, 653 (2d Cir. 1991) (noting that the possibility of bias is not sufficient reason to overturn the trial judge's determination that the juror should not be dismissed); see generally Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

## V. Conclusion

For the foregoing reasons, Petitioner's request for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed with prejudice. Petitioner's motion to stay and to appoint counsel (Dkt #8) is denied with prejudice. Because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   September 25, 2013
         Rochester, New York